IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 09-cv-02238-PAB-KMT

PATTI CHAMBLESS,

    Plaintiff,

v.

DEVELOPMENTAL OPPORTUNITIES, INC.,
a nonprofit corporation d/b/a Starpoint,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on defendant's motion for summary judgment [Docket No. 29]. The motion is fully briefed and ripe for disposition.

## I. BACKGROUND

Defendant Developmental Opportunities, Inc. is a non-profit organization which provides services to developmentally disabled individuals, who the defendant describes as its "consumers." Defendant hired plaintiff Patti Chambless on February 19, 2008 to work as a Support Team Member in its Adult Services section. Ms. Chambless was responsible for providing "necessary residential coverage to assure safety and supervision of consumers." Docket No. 29 at 2, ¶ 2; Docket No. 37 at 3, ¶ 2. One such consumer, named M.S., assaulted plaintiff on June 10, 2008. Plaintiff reported the assault to her supervisor, Ursula Mbene, and a workers' compensation claim was filed.[1]

---

[1] The record is not entirely clear how the workers' compensation claim was initiated. In any event, both parties participated in the process.

Plaintiff received temporary total disability benefits from June 11, 2008 until June 16, 2008.  As a result of the assault, plaintiff claims she suffers from headaches, post-traumatic stress disorder, and anxiety,[2] for which she has received medical treatment.  Plaintiff testified that Ms. Mbene was insensitive to the consequences of the assault, blaming plaintiff for what happened and reprimanding her for her unwillingness to work with M.S. and for taking sick leave to attend medical appointments.  Upon her return to work, plaintiff provided defendant with work restrictions that her workers' compensation physician placed on her, which included a restriction on physically restraining or managing consumers with a propensity for violence.  Plaintiff contends that defendant did not comply with these restrictions.  In particular, plaintiff claims that defendant required her to be in the presence of M.S.

On September 18, 2008, defendant terminated plaintiff's employment, informing her that her termination was "due to a pattern of not performing job duties in a manner that is needed to ensure the safety and provision of identified supports for the individuals Starpoint serves."  Docket No. 37-5 at 16.  Plaintiff alleges that her termination was due to disability discrimination and retaliation for her seeking workers' compensation benefits and medical leave.  Defendant seeks summary judgment on all of plaintiff's claims.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the

---

[2]Plaintiff also has a history of suffering from infrequent seizures as a result of injuries suffered in a 1982 car accident.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).[3]

**III. DISCUSSION**

In her amended complaint [Docket No. 18], plaintiff has brought two federal claims, the first pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the second pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101-12213. Plaintiff has also brought a state law retaliatory discharge claim. The Court will address each in turn.

---

[3] Plaintiff argues that the materials upon which defendant relies are not competent summary judgment evidence. Defendant relies upon "depositions [and] documents," Fed. R. Civ. P. 56(c)(1)(A), and plaintiff has not explained why these specific materials "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

**A. FMLA**

In response to defendant's motion for summary judgment, plaintiff responded that her "FMLA claim is withdrawn." Docket No. 37 at 13.  In response to plaintiff's withdrawal of her FMLA claim, defendant seeks an award of fees and costs associated with defending against plaintiff's FMLA claim pursuant to 28 U.S.C. § 1927.  The Court will not address this request for relief, which is made in defendant's reply brief.  If defendant seeks an award of fees and costs, it may file a separate motion.  *See* D.C.COLO.LCivR 7.1C ("A motion shall not be included in a response or reply to the original motion.  A motion shall be made in a separate paper.").

**B. ADA**

Plaintiff's only other federal claim for relief relies upon the ADA.  The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  In cases such as this, where a plaintiff seeks to establish an ADA violation through circumstantial evidence, the Court applies the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1217 (10th Cir. 2010); *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).  "Accordingly, the plaintiff must first establish a prima facie case of discrimination, showing a genuine issue of material fact exists on each of three points: '(1) she is a disabled person as defined by the ADA; (2) she is qualified,

with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) her employer discriminated against her because of her disability.'" *Johnson*, 594 F.3d at 1217 (quoting *MacKenzie*, 414 F.3d at 1274); *see Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1128 (10th Cir. 2003); *Poindexter v. Atchison, Topeka & Santa Fe Ry.*, 168 F.3d 1228, 1230 (10th Cir. 1999).

In regard to the first point, a "disability" for purposes of the ADA consists of "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). The Tenth Circuit has found that "[t]his definition contains three elements." *Doebele*, 342 F.3d at 1129. "First, the plaintiff must have a recognized impairment; second, the plaintiff must identify one or more appropriate major life activities; and third, the plaintiff must show that the impairment substantially limits one or more of those activities." *Id.* (citation omitted). It is plaintiff's burden to "'articulate with precision the impairment alleged and the major life activity affected by that impairment,'" and "the court is to analyze only those activities identified by the plaintiff." *Id.* (quoting *Poindexter,* 168 F.3d at 1232); *cf. id.* ("Whether the plaintiff has an impairment within the meaning of the ADA is a question of law for the court to decide.") (citations omitted). Examples of major life activities are "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

In its motion, defendant claims that plaintiff has not identified any major life

activity that is affected by her impairment.  *See* Docket No. 29 at 8-9.  In response, plaintiff identifies her impairments – a "pre-existing seizure disorder," "post-traumatic stress disorder, depression and anxiety" – but makes no mention of any major life activity affected by these impairments and admits that "she has no difficulties with driving, hearing, vision, walking or ambulating, dressing, bathing, or eating."  *See* Docket No. 29 at 4, ¶ 8; Docket No. 37 at 3.

Nor does plaintiff identify any evidence relating to the requirement that the impairment be substantially limiting.  *Cf. Johnson*, 594 F.3d at 1218 ("An impairment is substantially limiting when it renders an individual either unable or significantly restricted in her ability to perform a major life activity 'compared to the average person in the general population.'") (citation omitted).  Instead, plaintiff describes the stress and anxiety that accompanied being in proximity to M.S. and dealing with Ms. Mbene's insensitivity.  Even assuming plaintiff had met her burden of specifically identifying "working" as the major life activity affected by her impairments,[4] the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  29 C.F.R. § 1630.2(j)(3)(i); *see MacKenzie*, 414 F.3d at 1276 ("[T]he major life activity of working cannot be 'substantially impaired' if a plaintiff cannot work under a certain supervisor because of the stress and anxiety it causes.") (citations omitted).

In light of the foregoing, the Court finds that defendant is entitled to summary

---

[4]The Tenth Circuit "has recognized 'working' as a major life activity," but the "Supreme Court has repeatedly questioned whether 'working' should even qualify as a major life activity."  *MacKenzie*, 414 F.3d at 1275 & n.14.

judgment on plaintiff's ADA claim.

### C. Retaliatory Discharge

Plaintiff's third and final cause of action asserts a state law claim for retaliatory discharge. Defendant responds by citing the elements of a retaliation claim arising under federal civil rights law. *See* Docket No. 29 at 13 (citing *Tavera v. Potter*, No. 04-cv-02450-CBS-MJW, 2006 WL 1184469, at *11 (D. Colo. May 3, 2006) (outlining the elements of a prima facie case of retaliation in violation of Title VII)). In light of defendant's failure to address the legal elements of plaintiff's state law claim and because defendant is entitled to summary judgment on plaintiff's federal claims, the Court will decline to exercise supplemental jurisdiction over plaintiff's state law retaliatory discharge claim.[5] *See* 28 U.S.C. § 1367(c)(3); *see also Cordova v. Aragon*, 560 F. Supp. 2d 1041, 1065 (D. Colo. 2008) (declining to exercise supplemental jurisdiction over state law claims after noting that "that there are disputed questions of

---

[5]In her amended complaint, plaintiff alleged that she was discharged in retaliation "for taking leave pursuant to the FMLA, for filing a workers' compensation claim, and for requesting reasonable accommodation for her disabilities." Docket No. 18 at 9, ¶ 55. Plaintiff has since abandoned the last reason alleged, now arguing that her discharge was in retaliation for "filing a worker[s'] compensation claim, . . . for taking medical leave for her injuries, and . . . for being assaulted." Docket No. 37 at 11; *see* Docket No. 42 at 12. Consequently, plaintiff apparently still contends that her discharge was, at least in part, in retaliation for taking medical leave. Retaliation is a theory of recovery under the FMLA. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002). To plead a prima facie FMLA retaliation claim, plaintiff must allege that (1) she engaged in an activity protected by the FMLA; (2) she suffered an adverse employment action; and (3) there is a causal connection between her engagement in FMLA-protected activity and the adverse employment action. *See Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). Plaintiff, however, limits her arguments to the state law retaliatory discharge cause of action. Furthermore, as noted above, plaintiff has withdrawn her FMLA claim. And, even if the Court were to construe plaintiff's third claim for relief as invoking the FMLA, she admits that she never requested FMLA leave.

7

fact" and that "Defendants have failed to present a compelling argument that they are entitled to summary judgment" on the state law claims).

### D. Plaintiff's Motion for Partial Summary Judgment

Plaintiff also seeks summary judgment on her ADA and retaliatory discharge claims. *See* Docket No. 42. As discussed above, the Court, viewing the evidence in the light most favorable to plaintiff, concludes that defendant is entitled to summary judgment on these claims. Therefore, plaintiff's motion for partial summary judgment must be denied.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's motion for summary judgment [Docket No. 29] is GRANTED with respect to plaintiff's Family and Medical Leave Act and Americans with Disabilities Act claims, which are DISMISSED with prejudice. It is further

**ORDERED** that plaintiff's state law retaliatory discharge claim is DISMISSED without prejudice. It is further

**ORDERED** that plaintiff's motion for partial summary judgment [Docket No. 42] is DENIED. It is further

**ORDERED** that, in accordance with the foregoing, judgment shall enter in favor of defendant and against plaintiff. It is further

**ORDERED** that the trial scheduled to begin on August 1, 2011 and the trial preparation conference scheduled for July 15, 2011 are VACATED.

DATED February 18, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge